[Cite as *Shih v. Byron*, 2011-Ohio-2766.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| WENDY SHIH | C.A. No. 25319 |
| Appellee/Cross-Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BARRY BYRON, JR. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant/Cross-Appellee | CASE No. 2005-03-0979 |

DECISION AND JOURNAL ENTRY

Dated: June 8, 2011

CARR, Judge.

{¶1} Appellant/cross-appellee, Barry Byron, Jr., appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. Appellee/cross-appellant, Wendy Shih, appeals from the same judgment entry. This Court affirms, in part, and reverses, in part.

I.

{¶2} Ms. Shih and Mr. Byron were married on June 8, 1991. As a result of their marriage, the parties have two children, Z.B., who was born on March 19, 1994, and T.B., who was born May 29, 1996. In August 2004, the parties temporarily relocated to Hong Kong because Mr. Byron received a Fulbright Fellowship. The family rented out their home in Stow, Ohio, and rented for themselves an apartment in Hong Kong. Ms. Shih is a native of Taiwan and the parties' plan was to visit her family in Taiwan over the Christmas holiday.

{¶3} In the final decree of divorce issued on April 11, 2007, the trial court made the following factual findings with respect to what it captioned as, "THE HONG KONG INCIDENT." In November 2004, Mr. Byron moved out of the parties' apartment. A former girlfriend of Mr. Byron arrived in Hong Kong from the United States and began staying with him. When Ms. Shih expressed a desire to return to Ohio, Mr. Byron initiated wardship proceedings in a Hong Kong court to prohibit Ms. Shih and the children from leaving. As a result of the judgment in the Hong Kong court, Ms. Shih was unable to visit her family at Christmas, but was able to return to Ohio with the children. During the period of time when Ms. Shih was prohibited from leaving Hong Kong, Mr. Byron and his girlfriend went on a trip to Bangkok, Thailand. In the divorce decree, the trial court stated that, "[a]t the trial in this Court, the Husband, a philosophy professor who teaches an honors ethics course was unable to understand the irony in his inappropriate behavior."

{¶4} Subsequently, on March 16, 2005, Ms. Shih filed a complaint for divorce. Mr. Byron filed his answer on July 22, 2005. The matter proceeded to trial in August 2006. On April 11, 2007, the trial court issued its decree of divorce. On May 13, 2009, two qualified domestic relations orders were issued in this case, distributing the parties' retirement accounts in accordance with the decree of divorce. On May 27, 2009, Mr. Byron filed a notice of appeal. Ms. Shih filed a notice of cross-appeal on June 5, 2009. On June 29, 2009, this Court dismissed both appeals on the basis that the parties did not appeal from a final, appealable order. In our journal entry, we concluded that the trial court had insufficiently determined the rights and obligations of the parties' retirement accounts. This Court noted that although the trial court stated that the value of the parties' accounts was unknown and therefore ordered the parties to exchange statements, the trial court proceeded to divide the accounts, ordering that they be

"equalized by transferring the amount necessary to equalize the accounts." On March 24, 2010, the trial court issued a journal entry which it captioned a "nunc pro tunc" judgment entry. In the journal entry, the trial court identified the value of the parties' retirement accounts and gave orders with respect to each account so to equalize the value of the accounts. On March 26, 2010, Mr. Byron filed a notice of appeal. On April 19, 2010, Ms. Shih filed a notice of cross-appeal.

{¶5} Mr. Byron raises two assignments of error on appeal. Ms. Shih raises two assignments of error on cross-appeal.

II.

## ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN THE DISTRIBUTION OF THE PARTIES' MARITAL ASSETS AND DEBTS."

{¶6} In his first assignment of error, Mr. Byron contends that the trial court abused its discretion in distributing the parties' marital assets and assigning responsibility for marital debts. Mr. Byron makes two arguments in support of his assignment of error. First, Mr. Byron argues that the trial court miscalculated his equitable interest in the marital residence by assigning him the same debt on the second mortgage on two separate occasions. Second, Mr. Byron argues that the trial court assessed him an additional $1,790 in obligations which amounted to double-taxation for non-marital expenditures.

{¶7} "A trial court in any domestic relations action has broad discretion in fashioning an equitable division of marital property." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218, citing *Berish v. Berish* (1982), 69 Ohio St.2d 318. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore*, 5 Ohio St.3d at 219, see, also *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144.

{¶8}    Mr. Byron's first argument is that the trial court erred and abused its discretion determining the equity value of the parties' marital residence and the apportionment of said equity value.  The trial court ordered Mr. Byron to quitclaim his interest in the marital home to Ms. Shih.  In turn, Ms. Shih was ordered to indemnify and hold Mr. Byron harmless on the mortgages, taxes, and insurance.  Ms. Shih was further ordered to "refinance the mortgages within (6) months to remove Husband from any further liability of these debts."  The parties stipulated at trial that the marital residence had a value of $202,000.  The parties also agreed that there are two mortgages against the home, both secured through Charter One.  Ms. Shih testified that the first mortgage had a balance due of $118,500, and that the second mortgage, which is a line of credit, had a balance due of $36,500.  Mr. Byron testified that the first mortgage had a balance due of $115,000 and that the line of credit had a balance due of $36,130.  The trial court determined that the combined balance for both mortgages was $154,555.  This resulted in the trial court finding the net equity of the home to be $47,445.  Mr. Byron contends that while there was no issue as to the value of the home, and only a slight discrepancy as to the balance owed on the first mortgage, there is a significant issue as to the manner in which the trial court divided the line of credit balance.

{¶9}    In support of his position, Mr. Byron points to his testimony at trial that in order for the parties to meet their payment obligations during their time in Hong Kong, he would deposit and apply the Fulbright monies against the line of credit balance and then the parties would access the line of credit funds through ATM withdrawals.  Mr. Byron testified that he utilized this method because he received the Fulbright money in U.S. dollars and there were issues inherent in converting the Fulbright money into currency that could be used Hong Kong.  Therefore, according Mr. Byron, the line of credit, while a debt, was the only source of funding

for the parties. Mr. Byron admitted and agreed that he should be assessed 60% of the line of credit balance. He maintained this position at trial as well as in his proposed findings of fact and conclusions of law. On appeal, Mr. Byron contends that the trial court erred in calculating his interest in the equity in the parties' home. Mr. Byron argues that the trial court deducted the full amount of the first mortgage and line of credit before determining equity. It then divided the net equity in half and then assessed Mr. Byron an additional sixty percent of the line of credit which had already been deducted. As a result, according to Mr. Byron, he was initially made responsible for fifty percent of the line of credit, and then subsequently made responsible for another sixty percent of that same line of credit. In his merit brief, Mr. Byron described this as either a mathematical error or "clear abuse" by the trial court.

{¶10} We agree with Mr. Byron's contentions that the trial court abused its discretion in determining Mr. Byron's equitable interest in the marital home. In its decree of divorce, the trial court determined that both parties used the equity line of credit for their own expenses and found that the balance due should be allocated 60% to Mr. Byron and 40% to Ms. Shih. The trial court separately found that Mr. Byron "used marital funds of $3,580 in expenses for his girlfriend and [] one-half of this amount should be credited to [Ms. Shih] from the property settlement." As noted above, the trial court determined the combined balance for both mortgages to be $154,555 and the net equity of the home to be $47,445. This finding with respect to net equity took into account both the first and second mortgages on the marital home. The trial court found Mr. Byron's one-half equity interest to be $23,722.50. The trial court subsequently found that "[a]fter offsets for the amounts due to Wife from Husband ($1,795 [representing one half of the marital funds the husband used on his girlfriend], $21,670.20 [representing 60% of the balance owed on the line of credit], total $23,465.20), the total due to Husband is $257.30." The trial

court abused its discretion in making this determination. Prior to determining the net equity in the marital residence, the trial court held each party accountable for half of the balance owed on the home. This necessarily included 50% of the balance owed on the line of credit. After determining Mr. Byron's one-half equity interest, the trial court again assigned 60% of the balance owed on the line of credit to Mr. Byron. Thus, instead of assigning 60% of the balance owed on the line of credit prior to determining the parties' equity, the trial court held Mr. Byron responsible for the same debt in two separate instances. Such a division of marital debts constitutes an abuse of discretion.

{¶11} Mr. Byron also contends that he was "double taxed" for non-marital expenditures. The trial court found that Mr. Byron "used marital funds of $3,580 in expenses for his girlfriend and [] one-half of this amount should be credited to Wife from the property settlement." As noted above, the trial court assessed to Mr. Byron the amount of $21,670.20, which represented 60% of the balance owed on the line of credit, as well as the amount of $1,795, which represented one half of the marital funds the husband used on his girlfriend. Mr. Byron argues that he should not have been assigned responsibility for the use of any additional marital funds other than that which was included within the balance owed on the line of credit. In support of this position, Mr. Byron asserts that the only marital funds that were used on his girlfriend would have necessarily come from the line of credit.

{¶12} The second argument Mr. Byron makes in support of his assignment of error is not well-taken. Ms. Shih submitted an exhibit at trial entitled, "ASSETS AND LIABILITIES OF SHIH/BYRON," which indicated Mr. Byron owed her $3,580 for "Dissipation – Money used on affairs." This particular debt item was listed under a section of the document entitled, "HUSBAND OWES WIFE," and included items such as "Van Guard Account dissipation," as

well as several items which were the subject of the temporary orders. Notably, the figure for marital funds used on affairs was not included under a separate liabilities section in the exhibit which included the first mortgage and the line of credit which had been taken against the marital residence. It is clear from the divorce decree that the trial court intended to make findings with respect to the $3,580 in marital funds that Mr. Byron used on his girlfriend and the Van Guard Account dissipation that were separate from the findings it made with respect to the amount owed on the line of credit. Given the evidence Ms. Shih introduced at trial that Mr. Byron used $3,580 in marital funds on his girlfriend which was separate from the line of credit, the trial court had a basis to make a separate and distinct finding in the divorce decree. Thus, Mr. Byron was not "double taxed" for non-marital expenditures and this portion of his argument must be rejected.

{¶13} To the extent that the trial court assigned the same debt on the line of credit to Mr. Byron on two separate occasions, the first assignment of error is sustained. How this error impacts the equitable distribution of marital assets and debts is not before us, but may be considered by the trial court on remand.

## ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING APPELLEE SPOUSAL SUPPORT, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶14} In his second assignment of error, Mr. Byron argues that the trial erred in awarding Ms. Shih spousal support. This Court disagrees.

{¶15} In support of his second assignment of error, Mr. Byron argues that the trial court acted improperly by awarding Ms. Shih spousal support when she neither requested spousal support at the final hearing nor included such a request in her proposed findings of fact and

conclusions of law. Mr. Byron further argues that Ms. Shih never presented evidence to demonstrate a need for spousal support. Mr. Byron concludes that the tone of the trial court's judgment entry is evidence of a "clear dis[d]ain" toward him and that the award of spousal support was made with the intent to punish him. Ms. Shih responds by noting that she made a request for spousal support in the original complaint.

{¶16} R.C. 3105.18(B) states, in a pertinent part:

"In divorce and legal separation proceedings, upon request of either party and after the court determines the division or disbursement of property under [R.C. 3105.171], the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party."

{¶17} A review of the complaint for divorce filed on March 16, 2005, reveals that Ms. Shih did request to "be awarded a reasonable sum of spousal support (alimony)." Mr. Byron responds by arguing that while the complaint does contain a request for spousal support, the record is void of any further request for spousal support, including any request or real evidence submitted at the trial court in support of such relief. Mr. Byron argues that "[t]his substantiates that Ms. Shih did not really expect to receive spousal support in addition to child support given the parties' financial circumstances."

{¶18} At the outset, we note that the "request" for spousal support required under R.C. 3105.18(B) may be made in the complaint for divorce. *Rose v. Rose* (Nov. 7, 2001), 9th Dist. No. 3194-M; *Wolf v. Wolf* (Sept. 27, 1996), 2d Dist. No. 96 CA 10. See, also *Gordon v. Gordon* (2009), 5th Dist. Nos. CT2007-0072, CT2007-0081, 2009-Ohio-177 (wherein the court analyzed whether a party complied with R.C. 3105.18(B) by looking to whether such a request was made in the original complaint). This Court has held that when a complaint contains a request for spousal support, the trial court must determine the appropriateness of a spousal support order

under Civ.R. 75(F)(1). *Rose*, supra. Thus, Mr. Byron's contention that the trial court improperly "took it upon itself to conduct the analysis of whether spousal support should be awarded" is without merit.

{¶19} While Ms. Shih did, in fact, request spousal support in this case, we still must consider whether the award of spousal support was against the manifest weight of the evidence. "When applying a civil manifest-weight-of-the-evidence standard, a court of appeals should affirm a trial court when the trial court's decision is supported by some competent, credible evidence." *Everitt v. Everitt*, 9th Dist. No 24860, 2010-Ohio-875, at ¶6; quoting *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, at ¶3; *Rosen v. Chesler*, 9th Dist. No. 08CA009419, 2009-Ohio-3163, at ¶8.

{¶20} While a trial court is given broad discretion in awarding spousal support, it still must comply with R.C. 3105.18(C)(1), which provides:

"In determining whether spousal support is appropriate and reasonable, *** the court shall consider all of the following factors:

"(a)    The income of the parties[;]

"(b)    The relative earning abilities of the parties;

"(c)    The ages and the physical, mental, and emotional conditions of the parties;

"(d)    The retirement benefits of the parties;

"(e)    The duration of the marriage;

"(f)    The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

"(g)    The standard of living of the parties established during the marriage;

"(h)    The relative extent of education of the parties;

"(i)    The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

"(j)    The contribution of each party to the education, training, or earning ability of the other party;

"(k)    The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

"(l)    The tax consequences, for each party, of an award of spousal support;

"(m)    The lost income production capacity of either party that resulted from that party's marital responsibilities;

"(n)    Any other factor that the court expressly finds to be relevant and equitable."

{¶21} Mr. Byron contends that the trial court's award of spousal support "effectively disable[d] [him] from accommodating his children to a somewhat similar lifestyle enjoyed in Ms. Shih's household." Under the trial court's temporary orders, Mr. Byron had been ordered to pay child support in the amount of $773.92, as well as monthly payments toward the line of credit and all of his own household expenses. Mr. Byron testified that this resulted in his living in a two-bedroom apartment because he could not afford to rent a three-bedroom apartment. Mr. Byron argues this was a less than optimal situation because he had his children fifty percent of the time and was paying significant expenses toward their care while Ms. Shih resided in the marital residence and received more than $700 dollars in tax free child support payments. Mr. Byron contends that if the trial court had alleviated just a small portion of the obligations placed on him under the temporary orders, he would have been able to secure a larger apartment and assume a standard of living which more closely resembled that which he had prior to the parties' separation. Mr. Byron contends that, instead, the trial court ordered spousal support which effectively disabled him. Mr. Byron also challenges the trial court's determination with respect to his annual income. While he does not dispute that he has a base teaching salary of $55,100, Mr. Byron argues the trial court should not have taken into consideration the additional income

he earned from teaching a summer class at Kent State University, teaching LSAT courses, officiating baseball and basketball, and collecting some writing fee royalties. Mr. Byron argues the consideration of the additional income resulted in his being forced to perform multiple jobs in addition to his primary job.

{¶22} Mr. Byron's argument is not well-taken. While Mr. Byron contends that the spousal support order prevents him from accommodating his children to a similar lifestyle enjoyed in Ms. Shih's household, we note that the issues of spousal support and child support are separate and distinct. *Conroy v. Conroy* (Aug. 12, 1993), 10th Dist. No. 93-AP-27. In the decree of divorce, the trial court ordered Mr. Byron to pay Ms. Shih spousal support in the amount of $200.00 per month plus a 2% processing charge. The trial court determined Mr. Byron's income by accounting for his base salary of $55,100 as an associate philosophy professor at KSU, as well as the income he earns teaching summer classes at KSU, the income he earns teaching two LSAT courses, and the income he earns officiating. At one point during trial, Mr. Byron testified that he earned roughly $8,900 for teaching summer classes in 2006. Mr. Byron also testified that he teaches two practice LSAT courses per year and earns $1,300 per course. Mr. Byron testified that he also works as an amateur sports official. Mr. Byron speculated that as of the date of his testimony in August 2006, he had made between $800 and $1000 dollars for the year umpiring baseball games. Given the aforementioned testimony, Mr. Byron cannot prevail on his argument that there was not some competent, credible evidence to support the trial court's conclusion that his income for the purposes of calculating spousal support should be approximately $10,000 more than his base salary as a professor.

{¶23} There is no question that the income of the parties is an important consideration in making a determination with respect to spousal support. In making such a determination,

however, the trial court is required to consider all of the factors set forth in R.C. 3105.18(C)(1), including, but not limited to, the relative earning abilities of the parties; the relative extent of education of the parties; and the contribution of each party to the education, training, or earning ability of the other party; and the lost income production capacity of either party that resulted from that party's marital responsibilities. The trial court found Mr. Byron to have a "significantly higher earning ability than Wife." The trial court noted that Ms. Shih has a Bachelor's degree and a Master's degree in computer science, while Mr. Byron has two Master's degrees as well as a Doctorate. Ms. Shih testified at trial that she earned a Bachelor's degree in Taiwan and a Master's degree in computer information from the University of New Haven. Mr. Byron testified that he earned a Bachelor's degree from Princeton University in religion, as well as a Master's in religion from Yale University. Mr. Byron also earned a Master's and Ph.D. in philosophy from the University of Notre Dame. The trial court further found that the parties had relocated several times during the marriage in furtherance of Mr. Byron's career and that moving had an adverse impact on Ms. Shih's career because she had been unable to build seniority at any of her positions. The trial court specifically found that Ms. Shih "essentially put her career on hold to accommodate the demands of [Mr. Byron's] education and career." The trial court also found that Mr. Byron's income can be expected to increase more rapidly than Ms. Shih's as Mr. Byron moves forward in his career and that Ms. Shih's primary responsibility for care of the children has reduced her income capacity. Thus, while there may not be an extreme disparity in the current income of the parties, the trial court's spousal support order of $200 per month plus a processing fee was not unreasonable when consideration is given to all of the factors set forth in R.C. 3105.18(C)(1).

**{¶24}** We turn now to Mr. Byron's contention that the trial court's tone in the decree of divorce is evidence that the trial court aimed to punish him by awarding spousal support. It is not the role of this Court to make a determination as to whether the trial court exhibited a bias against a party. We note, however, that the law presumes that a judge is unbiased and unprejudiced in matters over which he or she presides. See *In re Disqualification of Olivito* (1994), 74 Ohio St.3d 1261, 1263." Nevertheless, "[i]f appellant believed the trial judge was biased or prejudiced at any stage of the proceedings, his remedy would have been to file an affidavit of interest, bias, prejudice or disqualification with the clerk of the Ohio Supreme Court." *Trott v. Trott*, 10th Dist. No. 01AP-852, 2002-Ohio-1077; R.C. 2701.03. The Chief Justice of the Ohio Supreme Court, or her designee, has exclusive jurisdiction to determine a claim that a common pleas court judge is biased or prejudiced. Section 5(C), Article IV, Ohio Constitution. "R.C. 2701.03 sets forth the procedure by which a party may seek disqualification. The statute requires the party seeking disqualification to file an affidavit of prejudice with the Ohio Supreme Court. This Court, therefore, has no jurisdiction to pass upon this issue[.]" *State v. Ramos* (1993), 88 Ohio App.3d 394, 398.

**{¶25}** As our review of the record indicates that the trial court's spousal support order was not against the manifest weight of the evidence, the second assignment of error is overruled.

### CROSS-APPELLANT'S ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DETERMINING THAT THE WIFE OWED THE HUSBAND THE SUM OF $7,200, REPRESENTING THE DIFFERENCE IN VALUE OF THE PARTIES' MOTOR VEHICLES AS OF THE FILING OF THE COMPLAINT."

**{¶26}** In her first assignment of error, Ms. Shih argues that the trial court erred and abused its discretion in determining that she owed $7,200 to Mr. Byron for the difference in value of the parties' motor vehicles. We agree.

{¶27} In the divorce decree issued on April 11, 2007, the trial court made a specific finding that the 2001 Honda van which Ms. Shih received had a value of $11,000. The trial court also found that the 1997 Chevy Cavalier which husband received had a value of $3,800. In subsequently dividing the parties' marital assets, the trial court found that "Wife owes Husband the sum of $7,200 representing the difference in values of the parties' motor vehicle as of the filing of the complaint."

{¶28} On appeal, Ms. Shih contends that the trial court made a mathematical error in determining the amount of money she must pay Mr. Byron in order to equalize the value of the parties' motor vehicles. Ms. Shih argues that the trial court's findings with respect to the value of the parties' vehicles would suggest that she should owe Mr. Byron $4,000 to equalize the value of the vehicles, not $7,200. In response to Ms. Shih's position, Mr. Byron contends that the trial court's finding with respect to the value of the vehicles was influenced by a prejudice against him. In support of his position, Mr. Byron argues that he presented evidence at trial that the 2001 Honda Odyssey was worth $16,000 while the 1997 Chevrolet Cavalier was worth only $3,000. Mr. Byron asserts that the trial court valued the ten-year-old vehicle at the highest possible value and the newer vehicle at the lowest possible value. Notwithstanding his assertion of prejudice, Mr. Byron contends that the trial court may have made a mathematical error in determining the amount to equalize the parties' vehicles, just as it made a mathematical error in determining the amount owed to Mr. Byron for his equitable interest in the home. In the alternative, Mr. Byron argues that the trial court may have "[overcome] its arbitrary determination of the values of the motor vehicles" by properly awarding Mr. Byron an equitable interest in the difference of the value of the vehicles.

{¶29} There was conflicting evidence presented in this case with respect to the value of the parties' motor vehicles. Ms. Shih testified that her Honda Odyssey had a value of $11,000 while the Chevy Cavalier had a value of approximately $3,000. Mr. Byron presented evidence that the low retail average price of the Chevy Cavalier is $2,975, the average retail price is $3,825, and the high retail price is $4,450. Mr. Byron also presented evidence that the average trade-in value the Honda Odyssey was $14,150, while the average retail is $16,775. As the trial court enjoys broad discretion in evaluating the credibility of the witnesses and determining the value of marital assets, it did not abuse its discretion in determining that the value of the Honda Odyssey was $11,000 and the value of the Chevy Cavalier was $3,800. *Cross v. Cross* (June 20, 2001), 9th Dist. No. 00CA0074, citing *Berish v. Berish* (1982), 69 Ohio St.2d 318. Furthermore, as discussed above, Mr. Byron's assertion that the trial court acted out of prejudice or bias in making its findings with respect to the value of the motor vehicles is not an issue properly before this Court. See *Trott*, supra. With respect to the trial court's determination that Ms. Shih must pay Mr. Byron $7,200 to offset the value of the vehicles, we conclude that the trial court abused its discretion in reaching this conclusion. The trial court's findings indicate that the parties' motor vehicles have a combined value of $14,800. Given the determination that the Chevy Cavalier has a value of $3,800, Ms. Shih would have to pay approximately $3,600 to offset the value of the motor vehicles. As the trial court's finding with respect the amount Ms. Shih must pay Mr. Byron to equalize the value of the vehicles was arbitrary and unreasonable, Ms. Shih's first cross-assignment of error is sustained.

## CROSS-APPELLANT'S ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DETERMINING THE ARREARAGE DUE TO SHIH FROM BARRY."

{¶30} In her second assignment of error, Ms. Shih contends that the trial court miscalculated the arrearages owed to her. This Court disagrees.

{¶31} In support of her second assignment of error, Ms. Shih argues that the trial court erred in determining that Mr. Byron owed only $4,447.76 in arrearages. Ms. Shih contends that the trial court failed to take into account $1,692 for automotive repairs, $129 in automobile insurance, half the cost of summer camp which equated to $2,109; and utility and medical bills from Hong Kong which totaled $3,710. Mr. Shih concludes that had the trial court properly taken into account the sums which Mr. Byron still owed at the time of the final decree, the trial court would have arrived at a total owed to her of $7,640.

{¶32} The trial court made the following determination in its decree of divorce:

"Pursuant to the temporary order and the parties' agreement, Husband owes Wife the following arrearages:

"a.    $129 for automobile insurance

"b.    $1692.26 for car repairs and fees,

"c.    $1,054.50 for children's summer camp.

"d.    $1,602 for children's medical expenses, Hong Kong rent, and the utilities."

The trial court subsequently concluded that, "Husband owes wife $4,477.76 for arrearages under the temporary order." In the portion of the divorce decree captioned, "PAYMENT OF ARREARAGES," the trial court noted that the "arrearages owed to Wife have been incorporated in the property division, *supra*."

{¶33} Ms. Shih couches her argument with respect to arrearage payments in terms of an abuse of discretion. Because she challenges the trial court's findings in regard to the specific amounts she is owed, the position she takes in her second assignment of error is more appropriately described as a challenge to the weight of the evidence in support of the trial court's

findings. Thus, we will affirm the trial court if its decision is supported by some competent, credible evidence. *Everitt*, supra.

{¶34} While Ms. Shih argues that the trial court failed to account for arrearage payments with respect to automotive repairs and insurance, the cost of summer camp, as well as utility and medical bills from Hong Kong, a review of the divorce decree reveals that such is not the case. Both Ms. Shih and Mr. Byron submitted proposed findings of fact and conclusions of law prior to trial. The parties submitted identical figures with respect to the amount Mr. Byron owed to Ms. Shih for automobile insurance, car repairs and fees, as well as for medical expenses, rent, and utilities in Hong Kong. As noted above, the trial court's divorce decree reflected the parties' agreement with respect to the amounts due in those specific areas. In his proposed findings of fact and conclusions of law, Mr. Byron asserted that he owed "$1,054.50 which is one-half of the summer camp expense." In Ms. Shih's proposed findings of fact and conclusions of law, she asserted that Mr. Byron owed her "$2,109 for one-half summer camp." It is evident that Mr. Byron's proposed arrearage payment with respect to the summer camp is one-half the figure set forth in Ms. Shih's proposed findings of fact and conclusions of law. It further appears the trial court concluded that the parties reached an agreement that Mr. Byron owed Ms. Shih $1,054 for one-half of the children's summer camp expenses. In her merit brief, Ms. Shih has not identified anything in the record to substantiate her claim that Mr. Byron owes her $2,109 for one-half the cost of summer camp, or that the total cost of summer camp was necessarily $4,218. A review of the record indicates that an exhibit was admitted at trial which stated that Ms. Shih spent $2,910 for summer camp activities and that Mr. Byron therefore owed $1,455. Ms. Shih also testified at trial that she spent a total of $2,910 on summer activities. Ms. Shih does not, however, refer to this exhibit or her testimony in support of her assignment of error. Thus, in

light of the parties' agreement and the fact that Ms. Shih has not demonstrated that the trial court's determination regarding the cost of summer camp was against the weight of the evidence, we cannot say that her claim that Mr. Byron owed her $7,640 in arrearages has merit.

**{¶35}** Ms. Shih's second assignment of error is overruled.

III.

**{¶36}** Mr. Byron's first assignment of error is sustained. His second assignment of error is overruled. Ms. Shih's first assignment of error is sustained. Her second assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division is affirmed, in part, and reversed, in part, and the cause remanded for further proceedings consistent with this decision.

Judgment affirmed, in part,
reversed, in part,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

DICKINSON, P. J.
CONCURS IN JUDGMENT ONLY

MOORE, J.
CONCURS

APPEARANCES:

PAULA C. GIULITTO, Attorney at Law, for Appellant/Cross-Appellee.

THOMAS C. LOEPP, Attorney at Law, for Appellee/Cross-Appellant.

BRENDON J. KOHRS, Attorney at Law, for Appellee/Cross-Appellant.