[Cite as *Calkins v. Calkins*, 2016-Ohio-1297.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| LINDSAY NOBLE CALKINS, | : | **O P I N I O N** |
| Plaintiff-Appellee/ | : | |
| Cross-Appellant, | | **CASE NOS. 2014-G-3203** |
| | : | **2014-G-3218** |
| - vs - | | |
| | : | |
| BENJAMIN CALKINS, et al., | | |
| | : | |
| Defendant-Appellant/ | | |
| Cross-Appellee. | : | |

Civil Appeals from the Geauga County Court of Common Pleas.
Case No. 11 DC 000555.

Judgment: Affirmed.

*Lynn B. Schwartz*, Lynn B. Schwartz Attorney at Law LLC, 31100 Pinetree Road, Suite 225, Pepper Pike, OH 44124; *Stanley Morganstern*, 28482 North 77th Street, Scottsdale, AZ 85266 (For Plaintiff-Appellee/Cross-Appellant).

*Edgar H. Boles*, Dinn, Hockman & Potter, LLC, 5910 Landerbrook Drive, Suite 200, Cleveland, OH 44124 (For Defendant-Appellant/Cross-Appellee).


TIMOTHY P. CANNON, J.

{¶1} This matter emanates from a judgment of the Geauga County Court of Common Pleas granting a divorce to Benjamin Calkins and Lindsay Noble Calkins and dividing their marital estate. Benjamin (hereinafter "Husband") filed an appeal from this

judgment, and Lindsay (hereinafter "Wife") filed a cross-appeal. This court consolidated the appeals for all purposes. For the following reasons, the judgment is affirmed.

{¶2} The parties were married in 1981 and had four children: three were emancipated adults at the time of the divorce proceeding; one was a minor child, but is now emancipated. Wife earned her Ph.D. and is an Associate Professor and the Associate Dean of the School of Business at a university in Cuyahoga County, Ohio. Her annual salary is approximately $106,000. Husband is a licensed attorney in Ohio, New York, and Washington, D.C. During the marriage, Husband primarily practiced in medium- to large-sized law firms. His yearly earnings from 1999 through 2005 averaged approximately $223,000. In 2006, he joined a law firm as a partner, where his annual salary was $240,000. He left that firm in 2008 and was hired "of counsel" for another firm at which he had no guaranteed salary. His gross annual income for the years 2008 through 2011 was as follows: $57,505; $56,227; $34,494; and $13,018.

{¶3} In 2011, Wife filed an action for divorce against Husband, who filed an answer and counterclaim. Wife joined three entities as defendants—Shady Hill Farms, Ltd.; K-2000 Holdings, Inc.; and Chagrin Valley Land & Livestock Co.—none of which are parties to this appeal.

{¶4} A contested trial was held before a magistrate on December 4, 2012. The court heard testimony from Wife, Husband, and their son. One point of contention between the parties concerned Husband's farming activities. Husband was raised on a family farm and continues to have an interest in farming. Throughout the marriage, Husband made an increasing amount of expenditures in various farming operations, which operated consistently at a loss. Wife claims most of the expenditures were made

2

without her knowledge or consent. She further contends Husband's farming operation was a hobby and a form of financial misconduct; Husband claims it was a business.

{¶5} Shady Hill Farms, Ltd. was formed around 1996 and has sustained great tax losses since 2003. Wife testified she repeatedly voiced her concerns regarding the size and expenditures of the farm due to the fact that it was not producing any income. During litigation, Wife learned Husband had hired full-time, live-in help on the farm, contrary to her expressed wishes.

{¶6} K-2000 Holdings, Inc. is a real estate holding company created by Husband in the late 1990s for the purpose of purchasing a parcel of land situated across the street from the parties' marital residence. On the property is a farmhouse, garage, barn, and outbuildings. Wife testified that Husband told her the property had been purchased by a client who was permitting Husband to use it. Husband began putting some of his sheep on the property and, against Wife's wishes, hired full-time, live-in employees. In 2005, Wife apparently voiced her concerns that Husband was using the property as though he owned it; Husband then told Wife he had been paying the owner $1500 per month under a rent-to-own agreement since 2000. Wife testified that Husband took out two mortgages for the property in the name of K-2000 without her knowledge. In 2009, Husband and Wife jointly refinanced the property which increased the mortgage debt by approximately $100,000. Wife testified that she agreed to the mortgage because she believed she would receive 50% of the K-2000 stock; however, tax returns for the years 2010 and 2011 show that Husband still owned 100% of the stock. Wife also testified that Husband timbered the property in 2011 without her

3

knowledge and received over $26,000 for the lumber. She claims she did not receive any of the proceeds.

{¶7} Other points of contention involved various assets and debts accumulated by Wife and Husband, many of which were depleted by Husband during the marriage without Wife's knowledge. The parties maintained separate finances and bank accounts. They both accumulated retirement benefits through their respective employment. Wife testified that Husband had approximately $500,000 in retirement benefits in 2008. During litigation, Wife learned that Husband had nearly depleted his retirement assets, which caused them to incur tax penalties of approximately $25,000. Wife further testified that Husband took out approximately $31,000 in loans on a life insurance policy and on a 401(k) account. Husband also received settlements and judgments that totaled over $87,000, which he deposited into his personal accounts. Wife claimed she did not become aware of these loans and proceeds until the divorce proceedings.

{¶8} A great deal of testimony also concerned whether the couple's joint tax returns were made available to Wife or whether they were concealed by Husband. In addition, there was a dispute over whether Wife was consulted by Husband before he obtained Parent Plus student loans for their children in an amount that exceeded $300,000.

{¶9} The magistrate issued her decision following trial and recommended the parties be granted a divorce on the grounds of incompatibility, that their shared parenting plan be approved and incorporated, and that their marital assets and debts be

divided. The magistrate also concluded, based on the following facts, that Husband had committed financial misconduct:

    a. He willingly continued to maintain and expend funds on Shady Hills, Inc., keeping the fact that the farm was failing from Plaintiff to the extent of preventing her from seeing joint tax returns and giving her fake/draft tax returns showing the losses to be less than they were.

    b. He willingly depleted $425,000 of retirement assets without Plaintiff's knowledge, and without a credible explanation of what the funds were used for.

    c. He amassed credit card debt in excess of $90,000 without Plaintiff's knowledge.

    d. He incurred Parent Plus college loans in excess of $300,000 without Plaintiff's knowledge.

    e. He concealed, and appropriated for his own use, the following marital assets without giving any credible justification for what the money was used: Nationwide Insurance theft claim funds in the amount of $37,500, timber funds in the amount of $26,500, Rising Phoenix settlement funds in the amount of $37,500, DeClemente Judgment Funds in the amount of $49,720, Taft 401(k) loan in the amount of $14,090. The total $182,753.17.

{¶10} Husband filed objections to the magistrate's decision, arguing the financial misconduct determination should not be adopted because Wife had not met her burden of proof. In its entry granting the parties a divorce, the trial court agreed that Wife had not proved Husband committed financial misconduct. However, the court agreed with and approved the magistrate's decision regarding the division of assets and debts. In part, the trial court stated that although it did not find Wife proved Husband engaged in financial misconduct, "the Court does find that [Husband's] actions in regards to his retirement accounts, timber sales proceeds, insurance claims, and other funds warrant a division of property that is not equal in monetary value."

5

{¶11} The trial court made an award of marital assets to Wife in the amount of $959,729.31 and an award or credit of marital assets to Husband in the amount of $861,755.17. It also held Husband solely responsible for payment of all marital debts, an amount in excess of $460,000, which included the Parent Plus student loans. The mortgage loan secured by the marital residence became Wife's sole obligation, and the mortgage loan secured by the K-2000 property became Husband's sole obligation. No spousal support was awarded to either party, but Husband was ordered to pay child support for their minor child until she turned 18 or graduated high school. The trial court directed that within 30 days from entry of the judgment, Wife and Husband "shall execute all deeds and other documents required to effectuate this judgment."

{¶12} Husband filed a timely appeal and asserts the following five assignments of error for our review:

> [1.] The trial court erred and abused its discretion to the prejudice of Appellant in its division of property in grossly unequal amounts in Appellee's favor, finding said unequal division equitable because Appellant 'acted in such a way that significant marital assets were converted or dissipated in conducting his law practice and operating a family farm on the marital residence premises without Plaintiff's meaningful participation or knowledge,' and 'with little to no input from' Appellee.
>
> [2.] The trial court erred and abused its discretion to the prejudice of Appellant in its division of property in grossly unequal amounts in Appellee's favor finding said unequal division equitable upon the premise that there were 'funds and marital property that cannot be accurately traced or accounted for because of Defendant's actions' where the subject transactions were years prior to the divorce and during the marriage, in the course of Appellant's law business and farming business, and the matter of their tracing and accounting was Plaintiff-Appellee's burden of proof at trial.
>
> [3.] The trial court erred and abused its discretion to the prejudice of Appellant in allocating to Appellant in the division of property 100% of the parties' marital debt including 100% of the parties' children's

6

college loans of $332,881 upon Plaintiff-Appellee's theory that she had no participation in nor knowledge of such college loan debt.

[4.] The trial court erred and abused its discretion to the prejudice of Appellant in its division of property in grossly unequal amounts in Appellee's favor in finding that Appellant's operation of a family farm on the parties' residence at a tax deductible financial loss resulted in or was a form of conversion or dissipation of marital assets or was sanctionable against Appellant's property division because Appellee maintained that funds and marital property transactions during the marriage could not be accurately traced or accounted for at trial.

[5.] The trial court erred and abused its discretion to the prejudice of Appellant in its division of property in grossly unequal amounts in Appellee's favor upon the premise that operating a family farm on the marital residence premises at a loss is some form of conversion or dissipation of marital assets as such farming operations were carried out 'without [the other spouse's] meaningful participation or knowledge' and with 'little to no input from [the spouse],' and that said farming operations thereby became an equitable basis for an unequal division of property or the grounds for a finding of financial misconduct warranting an unequal division of property.

{¶13} Wife also filed a timely cross-appeal and asserts the following two assignments of error for our review:

[1.] The trial court committed prejudicial error in failing to find defendant-appellant Benjamin Calkins guilty of financial misconduct.

[2.] The trial court committed prejudicial error in failing to require the parties to refinance.

{¶14} For ease of discussion, we initially consider Wife's first assignment of error. Wife argues the trial court erred in failing to adopt the magistrate's conclusion that Husband committed financial misconduct.

{¶15} "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with

7

a greater award of marital property." R.C. 3105.171(E)(4). "[W]hile R.C. 3105.171(E)(3) does not set forth an exclusive listing of acts constituting financial misconduct, those acts that are listed * * * all contain some element requiring wrongful scienter. Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets." *Hammond v. Brown*, 8th Dist. Cuyahoga No. 67268, 1995 Ohio App. LEXIS 3975, *9 (Sept. 14, 1995); *see also Gentile v. Gentile*, 8th Dist. Cuyahoga No. 97971, 2013-Ohio-1338, ¶55. The burden of proving financial misconduct is on the complaining party. *Smith v. Emery-Smith*, 190 Ohio App.3d 335, 2010-Ohio-5302, ¶50 (11th Dist.).

{¶16} "'The time frame in which the alleged misconduct occurs may often demonstrate wrongful scienter, *i.e.*, use of marital assets or funds during the pendency of or immediately prior to filing for divorce.'" *Lindsay v. Lindsay*, 6th Dist. Sandusky No. S-11-055, 2013-Ohio-3290, ¶21, quoting *Jump v. Jump*, 6th Dist. Lucas No. L-00-1040, 2000 Ohio App. LEXIS 5565, *12-13 (Nov. 30, 2000). In addition, an awareness of a spouse's wrongdoing during the marriage may weigh against a finding of financial misconduct. *See, e.g., Tustin v. Tustin*, 9th Dist. Summit No. 27164, 2015-Ohio-3454, ¶45; *Grow v. Grow*, 12th Dist. Butler Nos. CA2010-08-209, CA2010-08-218, & CA2010-11-301, 2012-Ohio-1680, ¶104. Another consideration is whether the spouse made "critical and unilateral decisions concerning the parties' retirement funds and other assets in anticipation of his divorce." *Smith v. Smith*, 9th Dist. Summit No. 26013, 2012-Ohio-1716, ¶21.

{¶17} We note there is some discrepancy among Ohio appellate courts as to the appropriate standard of review in this situation. Some courts hold that a finding of

financial misconduct, as well as the distributive award, is within the trial court's discretion. However, as a finding of financial misconduct is a legal determination, it must be supported by the weight of competent, credible evidence. We take this opportunity, therefore, to clarify the standard of review: While a trial court enjoys broad discretion in deciding whether to compensate one spouse for the financial misconduct of the other, the initial finding of financial misconduct must be supported by the manifest weight of the evidence. *Davis v. Davis*, 11th Dist. Geauga No. 2011-G-3018, 2013-Ohio-1118, ¶77; *Emery-Smith*, *supra*, at ¶50. Under this standard, the reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the decision must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Smith v. Smith*, 11th Dist. Geauga No. 2013-G-3126, 2013-Ohio-4101, ¶42, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179.

{¶18} Here, the record establishes Wife was aware of the farming operation losses for over a decade before she filed for divorce. Wife's exhibits also reveal her awareness of other financial matters during the marriage, as she consulted professionals who advised her to take immediate action over seven years before litigation commenced. There is no evidence that Husband made critical and unilateral decisions concerning marital assets in anticipation of divorce. The time frame of the events at issue, some of which occurred during 2011 but many of which began years prior to the divorce complaint, supports the trial court's decision that Husband's actions were not committed with wrongful scienter.

9

**{¶19}** The weight of the evidence supports the conclusion that Wife did not meet her burden of establishing Husband engaged in financial misconduct under these circumstances. Accordingly, we conclude the trial court's finding that Husband did not engage in financial misconduct was not against the manifest weight of the evidence.

**{¶20}** Wife's first assignment of error is without merit.

**{¶21}** We next jointly consider Wife's second assignment of error and Husband's five assignments of error, as they all argue the trial court's division of marital property and marital debt was an abuse of discretion. Whether the assets and liabilities accumulated during the course of the marriage were marital or separate is not at issue in this appeal: the trial court's determination that all of the assets and debts it divided were marital has not been assigned as error.

**{¶22}** A trial court is vested with broad discretion when fashioning a division of both marital property and marital debt. *Dilley v. Dilley*, 11th Dist. Geauga No. 2010-G-2957, 2011-Ohio-2093, ¶16; *Onyshko v. Onyshko*, 11th Dist. Portage No. 2008-P-0035, 2010-Ohio-969, ¶43. "However, a trial court's discretion is not unbridled. The award need not be equal, but it must be equitable. A reviewing court will not substitute its judgment for that of the trial court unless the trial court's decision is unreasonable, arbitrary or unconscionable." *Bisker v. Bisker*, 69 Ohio St.3d 608, 609 (1994) (internal citations omitted). "When applying this standard of review, we must view the property division in its entirety, consider the totality of the circumstances, and determine whether the trial court abused its discretion when dividing the spouses' marital assets and debts." *Baker v. Baker*, 4th Dist. Washington No. 07CA24, 2007-Ohio-7172, ¶28, citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 222 (1984).

10

{¶23} A potentially equal division is to be the starting point in determining an equitable distribution of property. *See Cherry v. Cherry*, 66 Ohio St.2d 348 (1981), paragraph one of the syllabus. If an equal division would be inequitable, R.C. 3105.171(C)(1) provides that "the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section." The division (F) factors are as follows:

(1) The duration of the marriage;

(2) The assets and liabilities of the spouses;

(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

(4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

{¶24} Husband argues the trial court erred to his prejudice in dividing marital assets and debts in grossly unequal amounts in Wife's favor. The unequal division was recommended by the magistrate due to a finding of financial misconduct. As noted, the trial court did not agree with this finding. As a result, Husband asserts that by adopting the magistrate's recommendation as to division of property while finding no financial misconduct, the trial court made an award that is not only unequal but also inequitable.

{¶25} In its conclusions of law, the magistrate stated that Wife has proven Husband committed financial misconduct. The decision goes on to state that, "[u]nder the circumstances, it is not appropriate or equitable that the marital assets and debt be divided equally, [and Wife] should be granted a larger award of the marital estate." The trial court, on the other hand, found that Wife did not prove Husband engaged in financial misconduct. As stated above, we affirm this decision. The trial court did, however, adopt the magistrate's recommendation as to an unequal division of marital property because it found Husband responsible for farming losses, depletion of his retirement account, dissipation of numerous other marital assets, and accumulation of significant debt without Wife's knowledge. In support of its unequal division, the trial court specifically stated the following:

> The Court does find that [Husband's] actions in regards to his retirement accounts, timber sales proceeds, insurance claims, and other funds warrant a division of property that is not equal in monetary value.
>
> Another factor that the Court feels is worthy of consideration is the history of those parties in handling marital finances. Each of the parties had his or her areas of responsibility for payment of marital expenses and debts that were to be paid from each party's income.
>
> Clearly, the sheep farming business was within [Husband's] area of responsibility. The farming operation was a business, it was not a

12

hobby; but, it was Defendant's business. Although Plaintiff may have indirectly benefitted from claims of losses or possibly from CAUV real property tax reductions, there is no question that Defendant ran the farming operation with little to no input from his wife. Even when the parties' adult son became involved in the farming operations, the son's involvement was done in conjunction with [Husband], not both parties.

Because of [Husband's] lack of accounting regarding retirement funds, insurance proceeds, settlement proceeds, and receipts from timber sales, it is difficult to determine what proceeds were used to pay marital debts, living expenses, or farming expenses. In determining an appropriate and equitable division of assets and liabilities, the Magistrate and this Court cannot rely upon [Husband's] accounting to [Wife's] detriment.

This Court repeatedly advises jurors that issues are not to be determined on the number of witnesses or exhibits, but upon the quality of the evidence presented. Despite that, it must be noted that in this matter [Wife] offered seventy-eight exhibits concerning the parties' finances; contrasted to [Husband's] three. It must also be noted that [Husband's] testimony is replete with instances of forgetfulness or confusion regarding what happened to receipts, loan proceeds, withdrawals from retirement, etc.

**{¶26}** The trial court awarded a total of $959,729.31 in marital assets to Wife: the marital residence, with a net value of $426,406; and various accounts and funds worth $533,323. The trial court awarded or credited a total of $861,755.17 in marital assets to Husband: the K-2000 property, with a net value of $217,969; Shady Hills Farm, worth $55,820; proceeds from the sale of timber in an amount of $26,200; judgments, settlements, and insurance claims worth $118,535; and various other assets worth $443,231. Husband notes that most of the liquid assets awarded to him no longer exist. However, Husband presented little or no explanation regarding what he did with the liquid assets he had accumulated. This was noted by the trial court in its ruling on the objections to the magistrate's decision.

13

{¶27} The court determined Husband should also be held solely responsible, with the exception of the mortgage on the marital residence, for all of the marital debt, which totaled over $461,000 plus the amount, if any, Husband owes his family. Included in this debt was $332,881 in Parent Plus student loans for the parties' children, which the trial court classified as marital debt.

{¶28} The fact that there is an extreme disparity in awards, primarily due to the sole allocation of the Parent Plus loans to Husband, does not automatically establish an abuse of discretion by the trial court. The trial court based its unequal division of property on factors it found to be "relevant and equitable," pursuant to R.C. 3105.171(F)(10). Under the circumstances of this case, therefore, we find the trial court did not abuse its discretion in its division of the marital estate.

{¶29} Husband's assignments of error are without merit.

{¶30} Finally, Wife argues in her second assignment of error that the trial court erred to her prejudice in failing to require the parties to refinance the existing mortgages on the marital residence and the K-2000 property. We do not agree.

{¶31} R.C. 3105.171(F)(5) provides that the trial court is to consider the "economic desirability of retaining intact an asset or an interest in an asset" when making a division of marital property. In addition, "R.C. 3105.171(J) empowers a trial court to order a spouse to refinance marital property allocated to the spouse to achieve an equal (or equitable) division of the property." *Wood v. Wood*, 10th Dist. Franklin No. 10AP-153, 2011-Ohio-679, ¶20, citing *Baker*, *supra*, at ¶38.

{¶32} In her decision, the magistrate recommended that the marital residence, with a net value of $426,406, be awarded to Wife and that the K-2000 property, with a

14

net value of $217,969, be awarded to Husband. At the time of litigation, both Husband and Wife were signatories on the mortgages of each property. Therefore, the magistrate further recommended that "[t]he parties should be responsible for all mortgages and expenses related to the real estate awarded to each of them, and should remove the other from the respective mortgages and refinance within 6 months."

{¶33} In the divorce decree, the trial court stated that Wife "shall be solely responsible for payment of the mortgage loan secured by" the marital residence and "shall hold [Husband] harmless and indemnify him from any liability for said loan." Likewise, the trial court stated that Husband "shall be solely responsible for payment of the mortgage loan secured by" the K-2000 property and "shall hold [Wife] harmless and indemnify her from any liability for said loan." However, the trial court did not order the parties to refinance these loans and did not make any reference to the magistrate's recommendation in this regard.

{¶34} A decision as to whether the parties must refinance their joint mortgages is within the trial court's discretion. *See, e.g., Beard v. Beard*, 2d Dist. Greene No. 2012 CA 66, 2013-Ohio-3375, ¶16; *Matics v. Matics*, 5th Dist. Stark No. 1995CA00114, 1996 Ohio App. LEXIS 1259, *14 (Mar. 4, 1996). There is nothing in the record that demonstrates the trial court's decision was not based on a proper consideration of the R.C. 3105.171(F) factors. We cannot hold, therefore, that the trial court abused its discretion.

{¶35} Wife's second assignment of error is without merit.

{¶36} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed.

15

THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

{¶37} I agree that Husband's assignments of error are not well-taken and that Wife's first assignment of error on cross-appeal is without merit. However, I believe Wife's second assignment of error on cross-appeal has merit. Therefore, I concur in part and dissent in part.

{¶38} In her second assignment, Wife alleges the trial court erred in failing to require the parties to refinance the mortgages each is required to pay.

{¶39} Since a trial court has broad discretion in dividing marital property, a reviewing court will not substitute its judgment for the trial court's unless the trial court has abused its discretion. *Bisker v. Bisker*, 69 Ohio St.3d 608, 609 (1994). Regarding this standard, we recall the term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.).

16

**{¶40}** In the instant matter, the record establishes that K2000 was solely owned by Husband. Husband purchased the 11497 Music Street property over time, through the corporation and without Wife's knowledge. Husband had taken two separate mortgages on the property in 2003 and 2007 without Wife's knowledge. In 2009, Wife, believing she would receive a 50 percent interest in K2000, agreed to sign the mortgage document. The property was refinanced and the mortgage debt was increased by approximately $100,000. Wife and Husband signed personally. The parties stipulated that the appraised value of the property, consisting of almost 52 acres, is $385,000 and the current mortgage balance is $167,031. The property was designated as a marital asset.

**{¶41}** The 11497 Music Street property, in the amount of $217,969, was awarded to Husband, less the mortgage. The 11510 Music Street property across the street, in the amount of $426,406, was awarded to Wife, less the mortgage. In her decision, the magistrate recommended that "[t]he parties should be responsible for all mortgages and expenses related to the real estate awarded to each of them, and should remove the other from the respective mortgages and refinance within 6 months."

**{¶42}** In the divorce decree, the trial court stated:

**{¶43}** "[Wife] shall be solely responsible for payment of the mortgage loan secured by 11510 Music St., Newbury Township, Ohio, and [Wife] shall hold [Husband] harmless and indemnify him from any liability for said loan.

**{¶44}** "[Husband] shall be solely responsible for payment of the mortgage loan secured by 11497 Music St., Newbury Township, Ohio, and [Husband] shall hold [Wife] harmless and indemnify her from any liability for said loan."

17

**{¶45}** However, the trial court, through inadvertence or purposely, made no mention of the refinancing recommendation made by the magistrate and did not order the parties to refinance. Wife claims this was error and an abuse of the trial court's discretion. Wife maintains that she will be "continuously exposed to Husband's economic failures" and that her "credit standing will remain in jeopardy and continued litigation to enforce the save harmless provisions of the Judgment most likely will occur." Upon review, both Wife and Husband have the ability to refinance the mortgages each is to pay. This writer agrees with Wife that the trial court erred in failing to order the parties to refinance.

**{¶46}** R.C. 3105.171(F)(5) states: "In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider * * * [t]he economic desirability of retaining intact an asset or an interest in an asset[.]"

**{¶47}** "There is no bright line as to the number of months for refinancing that would constitute an abuse of discretion. In reviewing the facts of appellate court divorce opinions, it seems that it is common for trial courts to permit 6 months or 12 months to refinance a home. *Stites v. Stites*, 2d Dist. No. 25595, 2013-Ohio-4950, ¶1 (6 months); *Sable v. Sable*, 5th Dist. No. 2012CA00230, 2013-Ohio-2635, ¶22 (12 months); *Sparks v. Sparks,* 12th Dist. No. CA2010-10-096, 2011-Ohio-5746, ¶2 (6 months); *Shih v. Byron*, 9th Dist. No. 25319, 2011-Ohio-2766, ¶8 (6 months); *Kumpus v. Kumpus*, 5th Dist. No. 2009CA00106, 2010-Ohio-3960, ¶5 (6 months); *Woodland v. Woodland*, 7th Dist. No. 06BE9, 2007-Ohio-3503, ¶3 (12 months is not unreasonable time to require refinancing to be accomplished). However, 48 months and 72 months have also been

ordered. *Hanifon v. Hanifon*, 11th Dist. No. 2004-L-187, 2006-Ohio-332, ¶25 (72 months given the facts of the case was not unreasonable time to allow refinancing to occur); *Espenschied v. Espenschied*, 5th Dist. No. 2002AP030021, 2002-Ohio-5119, ¶12 (48 months)." *Ramsey v. Ramsey*, 7th Dist. Jefferson No. 13 JE 17, 2014-Ohio-1227, ¶27.

**{¶48}** It is desirable to bring finality to the parties' marriage by dividing assets once and for all. Courts "should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage." *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 179 (1990). "'(W)hen circumstances permit, (trial courts) should strive to resolve the issues between the parties so as to disassociate the parties from one another or at least minimize their economic partnership.' [*Hoyt,*] at 182. But 'the trial court must obtain a result which will preserve the asset so that each party can procure the most benefit.' *Id.* at 181." *Daniel v. Daniel*, 139 Ohio St.3d 275, 2014-Ohio-1161, ¶13.

**{¶49}** In the case at bar, by awarding Husband K2000, it retained that asset, including the real estate, intact. *See* R.C. 3105.171(F)(5). The debt was assigned to Husband but there was no order to liquidate the asset. As such, Wife is left in the position of being financially open and responsible for the mortgage, without having any interest in the asset. The magistrate and trial court both noted Husband's lack of financial responsibility when dealing with marital assets and debt. This writer determines the trial court's failure to include and order the parties to refinance the mortgages on the real estate awarded to them is especially prejudicial to Wife. Requiring the parties to refinance is mutually beneficial as it furthers the goal of creating

19

a conclusion and finality to their marriage. *See Hoyt, supra,* at 179; *Daniel, supra,* at ¶13.

**{¶50}** Upon consideration, this writer would reverse and remand so that the divorce decree reflects and orders the parties to be responsible for all mortgages and expenses related to the real estate awarded to each of them and that the parties shall remove the other from the respective mortgages and refinance within at least 6 months.

**{¶51}** Accordingly, because I believe Wife's second assignment of error on cross-appeal has merit, I respectfully concur in part and dissent in part.