[Cite as *Speece v. Speece*, 2021-Ohio-170.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| MARCIA SPEECE, | : | **O P I N I O N** |
| Plaintiff-Appellee/ Cross-Appellant, | : | |
| | : | **CASE NOS. 2019-G-0193** |
| | : | **2019-G-0225** |
| - vs - | | |
| | : | |
| BRYAN SPEECE, et al., | | |
| | : | |
| Defendant-Appellant/ Cross-Appellees. | : | |

Civil Appeals from the Geauga County Court of Common Pleas, Domestic Relations Division, Case No. 2015 DC 00460.

Judgment: Modified and affirmed as modified.

*Joseph G. Stafford* and *Nicole A. Cruz*, Stafford Law Co., LPA, 55 Erieview Plaza, 5th Floor, Cleveland, OH 44114; *Annette C. Trivelli*, 147 Bell Street, Suite 201, Chagrin Falls, OH 44022 (For Plaintiff-Appellee/Cross-Appellant).

*Nick Alan Colabianchi,* 5725 Broadway, Cleveland, OH 44127 (For Defendant-Appellant/Cross-Appellee).

*John W. Shryock*, John Shryock Co., L.P.A., 30601 Euclid Avenue, Wickliffe, OH 44092 (For Defendant/Cross-Appellee, Janet Speece).

*Jeffrey T. Orndorff*, Jeffrey T. Orndorff Co., L.P.A., 117 South Street, Suite 110, P.O. Box 1137, Chardon, OH 44024 (Guardian ad litem).

TIMOTHY P. CANNON, J.

{¶1} Bryan Speece ("Bryan"), appellant/cross-appellee, and Marcia Speece

("Marcia"), appellee/cross-appellant, appeal from the December 31, 2018 final judgment

entry and decree of divorce of the Geauga County Court of Common Pleas. For the following reasons, we modify the trial court's judgment and affirm as modified.

{¶2} Marcia filed for divorce from Bryan on May 29, 2015, after being married for almost 25 years. During their marriage, the parties derived most of their income from EnTech Ltd. ("EnTech"). Bryan is the sole owner of EnTech. His mother, cross-appellee Janet Speece ("Janet"), performed legal work as an attorney for EnTech. The parties also owned various parcels of real property, financial accounts, vehicles, and personal property subject to division. They have two children together. At the time of the trial, only one child was emancipated. Both children are currently emancipated. For purposes of the present appeal, the facts and circumstances surrounding specific property will be discussed within each assignment of error accordingly.

{¶3} During the pendency of the divorce proceeding, the matter has been subject to numerous appeals and collateral attacks. *See EnTech Ltd. v. Geauga Cty. Court of Common Pleas*, 11th Dist. Geauga No. 2016-G-0092, 2017-Ohio-503 (denying EnTech's petition for writ of prohibition to prevent discovery of EnTech documents); *Speece v. Speece*, 11th Dist. Geauga No. 2016-G-0100, 2017-Ohio-7950 (affirming the denial of Bryan's motion for protective order); *Speece v. Speece*, 11th Dist. Geauga No. 2018-G-170, 2018-Ohio-4081 (dismissing Janet's appeal from decision to add her as a party defendant due to lack of a final, appealable order); *Speece v. Speece*, 11th Dist. Geauga No. 2019-G-0231, 2020-Ohio-627 (dismissing Bryan's appeal from a miscellaneous order due to lack of a final, appealable order). EnTech, through Bryan as owner, also filed a federal lawsuit in the Northern District of Ohio against Marcia, which was dismissed on summary judgment. That court also awarded sanctions against Bryan, stating:

> In the Court's view, it was not reasonable to continue this litigation following the completion of the depositions of [the parties' son] and Marcia Speece. Thereafter, it should have been clear to both the parties and counsel that EnTech could offer no admissible evidence that would prove all essential elements of each of its claims. Accordingly, it was unreasonable to continue the litigation.

*Entech, Ltd. v. Speece*, N.D.Ohio No. 5:16CV1541, 2019 WL 6051531, *5 (Nov. 15, 2019).

{¶4} On February 11, 2016, the trial court issued a magistrate's decision ordering Bryan to pay temporary child support and temporary spousal support. Bryan immediately filed objections and a request for a hearing under Civ.R. 75(N), and a hearing was held on the temporary orders on March 28, 2016, and December 22, 2016. No ruling was issued following the hearings.[1] Thereafter, extensive motion practice ensued on the part of both parties.

{¶5} On December 31, 2018, the trial court issued a decision and judgment, granting Bryan and Marcia a divorce. Additionally, the trial court found (1) Marcia's testimony credible, while Bryan and Janet's testimony was evasive and not credible; (2) both parties violated the temporary restraining order issued by the trial court; (3) Bryan's transfer of hundreds of thousands of dollars, with the assistance of Janet, constituted financial misconduct; and (4) an equal distribution of marital assets would not be equitable. The trial court then divided the assets unequally based on the evidence and testimony as discussed below. Further, the trial court dismissed Marcia's claim against Janet, in which she sought to designate as marital property certain funds Entech had paid to Janet as attorney fees.

---

1. On March 8, 2017, the trial court issued a judgment stating, in part, "All motions filed subsequent to Jan. 13, 2017 not in furtherance of the mediation shall not be considered or ruled upon."

3

{¶6} Following the judgment, Marcia filed a "motion to add new party defendants and a motion for temporary restraining order" with the trial court on February 15, 2019. The motion was ultimately granted on August 29, 2019. On March 7, 2019, Bryan filed a "motion for a copy of external media storage," seeking to receive external audio of a conversation the trial court had ordered to be sealed. Bryan intended to supplement the record on appeal with the audio recording; however, the trial court denied the motion on April 23, 2019.

{¶7} Timely notices of appeal and cross-appeal were filed by both parties. Bryan filed two motions to stay with this court after the appeal was noticed, each of which was denied. He has not responded to Marcia's assignments of error on cross-appeal.

{¶8} Bryan asserts twenty assignments of error on appeal, and Marcia asserts two assignments of error. Because many of the assignments of error overlap, we will consider them out of order and combined where logical to prevent redundancy.

{¶9} In his ninth assignment of error, Bryan challenges the trial court's determination that he committed financial misconduct. Because this determination impacted the trial court's distribution of marital assets, we address it before the challenges to property distribution:

> [9.] The trial court erred in determining that the Defendant committed financial misconduct and violated a temporary restraining order by transferring money to various bank accounts as a means of hiding funds from the Plaintiff.

{¶10} Bryan presents three issues under his ninth assignment of error, challenging the determinations that (1) he committed financial misconduct; (2) he violated the temporary restraining order; and (3) his mother, Janet, assisted in hiding funds by transferring money.

4

{¶11} We have previously discussed financial misconduct in *Calkins v. Calkins*, 11th Dist. Geauga Nos. 2014-G-3203 & 2014-G-3218, 2016-Ohio-1297:

> '[W]hile R.C. 3105.171(E)(3) does not set forth an exclusive listing of acts constituting financial misconduct, those acts that are listed * * * all contain some element requiring wrongful scienter. Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets.' *Hammond v. Brown*, 8th Dist. Cuyahoga No. 67268, 1995 WL 546903, *3 (Sept. 14, 1995) (citations omitted). The burden of proving financial misconduct is on the complaining party.
>
> '"The time frame in which the alleged misconduct occurs may often demonstrate wrongful scienter, *i.e.*, use of marital assets or funds during the pendency of or immediately prior to filing for divorce."' *Lindsay v. Lindsay*, 6th Dist. Sandusky No. S-11-055, 2013-Ohio-3290, ¶21, quoting *Jump v. Jump*, 6th Dist. Lucas No. L-00-1040, 2000 WL 1752691, *5 (Nov. 30, 2000). In addition, an awareness of a spouse's wrongdoing during the marriage may weigh against a finding of financial misconduct. Another consideration is whether the spouse made 'critical and unilateral decisions concerning the parties' retirement funds and other assets in anticipation of his divorce.' *Smith v. Smith*, 9th Dist. Summit No. 26013, 2012-Ohio-1716, ¶21.
>
> While a trial court enjoys broad discretion in deciding whether to compensate one spouse for the financial misconduct of the other, the initial finding of financial misconduct must be supported by the manifest weight of the evidence. Under this standard, the reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the decision must be reversed.

*Id.* at ¶15-17 (internal citations omitted).

{¶12} Here, the record establishes, and the parties do not dispute, that Bryan transferred hundreds of thousands of dollars from various accounts shortly after the complaint for divorce was filed by Marcia. Bryan argues he did not violate the temporary restraining order because it was not in place until September 1, 2015, and the transfers all occurred before that date. Bryan maintains that the assets were not

5

hidden, but were simply moved to protect them from Marcia, who had left the marital home without explanation before filing for divorce. Regardless of the exact date of the transfers, it was within the discretion of the trial court to infer that the time frame in which the transfer of assets occurred—immediately after Marcia left the marital residence and filed for divorce, and after Bryan received notice of the divorce filing— demonstrated wrongful scienter.

{¶13} Further, the evidence and testimony reflect a substantial amount of assets were transferred throughout the course of the proceeding, both before and after the temporary restraining order was issued. There is also substantial evidence that Janet aided the parties in engaging in a previous scheme to avoid tax liability. The trial court heard all of the evidence and testimony presented over ten days of trial and concluded that Bryan and Janet's testimony was evasive and unreliable. The trial court found Marcia's testimony was reliable.

{¶14} Although the trial court did not find that the assets paid to Janet were marital property, it did find the payments made to her as attorney fees, in an amount over one million dollars shortly after Bryan was served with the divorce filing, were "questionable, at best." Transcripts of recordings made by Marcia of her discussions with Bryan were submitted to the court, indicating that Bryan was aware these payments to Janet were made with an intention to lower Bryan and/or EnTech's tax liability. Also, Bryan transferred additional marital funds in excess of one million dollars into several accounts he refused to disclose during discovery. The funds were only discovered following a subpoena request to the financial institutions. In addition, Bryan, Janet, and associates of EnTech were uncooperative in previous hearings and proceedings, destroyed property, and claimed vital business records were destroyed

6

when they later were reproduced. All of this further led the trial court to conclude that Bryan's explanations for transferring and failing to disclose the funds were unreliable and that his actions constituted financial misconduct.

{¶15} Based on the evidence, testimony, history of financial manipulation of the Speeces' finances by Janet, and the substantial dissipation of the parties' assets after Bryan received notice of the filing for divorce, the greater weight of credible evidence supports the conclusion that Bryan engaged in financial misconduct. Accordingly, we conclude the trial court did not err in determining that Bryan engaged in financial misconduct.

{¶16} Bryan's ninth assignment of error is without merit.

{¶17} As we have affirmed the trial court's determination that Bryan committed financial misconduct, we combine his first, seventh, eighth, tenth, and twelfth assignments of error as follows:

> [1.] The trial court abused its discretion by failing to identify and classify all assets of the marriage, by failing to distribute some assets it found to be marital, by distributing assets it had neither valued nor found to be marital, by ordering an unequal distribution of assets without sufficient findings of fact, and by ordering that one spouse's asset, or a portion thereof, be distributed to someone other than that spouse without sufficient explanation.

> [7.] The trial court erred in not allocating the balances in eight bank accounts opened by the Plaintiff in the name of the parties' son between the parties as part of the marital estate.

> [8.] The trial court abused its discretion by awarding the Plaintiff $332,998.10 represented to be half of the funds the Defendant transferred from joint bank accounts immediately after commencement of the case.

> [10.] The trial court erred in determining that the Plaintiff should receive 75% of the value of certain marital assets and 50% of the value of other marital assets.

7

[12.] The trial court abused its discretion by allocating assets disproportionately and valuing the assets incorrectly.

{¶18} Trial courts have broad discretion in deciding appropriate property awards in divorce cases. *Berish v. Berish*, 69 Ohio St.2d 318, 319 (1982); *Calkins*, *supra*, at ¶22 (citations omitted) ("A trial court is vested with broad discretion when fashioning a division of both marital property and marital debt."). "However, a trial court's discretion is not unbridled. The award need not be equal, but it must be equitable. A reviewing court will not substitute its judgment for that of the trial court unless the trial court's decision is unreasonable, arbitrary or unconscionable." *Bisker v. Bisker*, 69 Ohio St.3d 608, 609 (1994) (internal citations omitted).

{¶19} "'When applying this standard of review, we must view the property division in its entirety, consider the totality of the circumstances, and determine whether the trial court abused its discretion when dividing the spouses' marital assets and debts.'" *Calkins*, *supra*, at ¶22, quoting *Baker v. Baker*, 4th Dist. Washington No. 07CA24, 2007-Ohio-7172, ¶28, citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 222 (1984). "In determining whether the trial court has abused its discretion, a reviewing court is not to weigh the evidence, but, rather, must determine from the record whether there is some competent, credible evidence to sustain the findings of the trial court." *Habo v. Khattab*, 11th Dist. Portage No. 2012-P-0117, 2013-Ohio-5809, ¶55, citing *Clyborn v. Clyborn*, 93 Ohio App.3d 192, 196 (3d Dist.1994).

{¶20} "A potentially equal division is to be the starting point in determining an equitable distribution of property." *Id.* at ¶23, citing *Cherry v. Cherry*, 66 Ohio St.2d 348 (1981), paragraph one of the syllabus. "The equitable division of marital property necessarily implies the equitable division of marital debt." *Longo v. Longo*, 11th Dist. Geauga No. 2004-G-2556, 2005-Ohio-2069, ¶109, citing R.C. 3105.171(F)(2). As this

8

court has observed, "equality of distribution, while a goal in many situations, must yield to concerns for equity." *Id.* at ¶111.

{¶21} "If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section." R.C. 3105.171(C)(1). The division (F) factors are as follows:

> (1) The duration of the marriage;
>
> (2) The assets and liabilities of the spouses;
>
> (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
>
> (4) The liquidity of the property to be distributed;
>
> (5) The economic desirability of retaining intact an asset or an interest in an asset;
>
> (6) The tax consequences of the property division upon the respective awards to be made to each spouse;
>
> (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
>
> (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
>
> (9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;
>
> (10) Any other factor that the court expressly finds to be relevant and equitable.

{¶22} Also, pursuant to R.C. 3105.171(E)(4), "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction,

9

concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."

{¶23} As discussed above, the trial court found Bryan engaged in financial misconduct. It also made a finding that an equal distribution would not be equitable due to the financial misconduct. As a result, the trial court made an unequal distribution of various assets to compensate Marcia as the offended party of the financial misconduct.

{¶24} The trial court acknowledged that "[n]either party produced sufficient evidence to enable the Court to trace funds or assets and determine that any of the parties' real property or financial/bank accounts were the separate property of either party." As such, Bryan failed to meet his burden of proof by a preponderance of the evidence to show tracing for those assets. However, this did not prevent the trial court from determining and assigning value to the parties' assets. There was evidence presented by Marcia supporting the value of the assets and characterization as marital property, and the December 31, 2018 Decision and Decree of Divorce assigned value to the real property, assets, and accounts of the parties. Further, various photographs, receipts, and written notations of the parties were presented to the trial court with regard to the personal property, including artwork, furniture, equipment, and jewelry. This evidence allowed the court to distribute the property accordingly.

{¶25} In light of the finding of financial misconduct, it was within the court's discretion to allocate assets unequally and in a manner the court deemed to be most equitable. *See* R.C. 3105.171(E)(4). Therefore, the trial court did not abuse its discretion in its allocation of the bank account balances, the award of $332,998.10 representing half of the funds transferred from joint bank accounts, the determination

10

that Marcia should receive 75% of the value of certain marital assets and 50% of other marital assets, or the distribution of items of personal property.

{¶26} Bryan's first, seventh, eighth, tenth, and twelfth assignments of error are without merit.

{¶27} Bryan's fourth assignment of error also challenges the distribution of marital property and states:

> [4.] The trial court erred in awarding the Plaintiff $499,497.15 representing 75% of the "licensing" payments received by the Defendant after the Commencement of the case.

{¶28} As discussed above, the trial court was within its discretion to award an unequal distribution of the licensing payments received by Bryan through EnTech from EnTech Taiwan.[2] The record of this portion of the award, however, contains an apparent mathematical error. Evidence presented at trial showed EnTech received deposits from EnTech Taiwan in the total amount of $524,129.00. The trial court ordered Bryan to pay "the sum of $499,497.15, which represents 75% of the funds that [Bryan] received in licensing payments after the commencement of the proceedings in this case." A distribution of 75% of the funds evidenced at trial would result in a total distribution of $393,096.75. Marcia concedes this point in her brief on appeal.

{¶29} The trial court did not necessarily err by ordering a distribution of $499,497.15, which is a sum higher than 75%, but the order conflicts with that decision by indicating that the amount is a 75% distribution. Therefore, the distribution ordered by the trial court is hereby modified to reflect the correct calculation of a 75% distribution, which is an award of $393,096.75.

---

2. The parties disputed at trial whether the funds received from EnTech Taiwan were licensing payments. However, the trial court's determination that the payments were for licensing is not relevant to the distribution of assets under this assignment of error.

11

{¶30} With respect to Bryan's fourth assignment of error, the trial court's order is modified.

{¶31} Next, Bryan raises issues regarding separate property claims. His sixth and eleventh assignments of error state:

> [6.] The trial court erred in not allocating to the Defendant $232,561 representing his settlement proceeds from a lawsuit and $38,673.11 representing his balance in an individual retirement account as his separate property that the Plaintiff misappropriated during the course of the marriage.

> [11.] The trial court erred in not allocating to the Defendant $158,643 representing his separate share of property attributable to the purchase of a home in Castro Valley, California.

{¶32} The allocation and division of marital and separate property is governed by R.C. 3105.171. The trial court must first determine whether particular property is separate or marital in nature, and then make an equitable distribution of that property. *Sedivy v. Sedivy*, 11th Dist. Geauga Nos. 2006-G-2687 & 2006-G-2702, 2007-Ohio-2313, ¶20.

{¶33} "Marital property includes either real and personal property or an interest in such property owned by one or both of the spouses and was 'acquired by either or both of the spouses during the marriage.'" *Id.* at ¶21, quoting R.C. 3105.171(A)(3)(a)(i). "Property acquired during marriage is presumed to be marital unless it can be shown to be separate." *Id.*, citing *McLeod v. McLeod*, 11th Dist. Lake No. 2000-L-197, 2002-Ohio-3710, ¶16. Conversely, separate property includes any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage. *Id.*, citing R.C. 3105.171(A)(6)(a)(ii).

{¶34} "The commingling of separate property with marital property does not destroy the identity of the separate property as long as the separate property is

12

traceable." *O'Grady v. O'Grady*, 11th Dist. Trumbull No. 2003-T-0001, 2004-Ohio-3504, ¶47, citing R.C. 3105.171(A)(6)(b). "Thus, the focus becomes on traceability and determining whether separate property has lost its character by becoming commingled with marital property." *Sedivy, supra,* at ¶22, citing *McCleod, supra,* at ¶23.

{¶35} "It should be noted that property acquired during the marriage is presumed to be marital property. '[T]he party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property.'" *O'Grady, supra,* at ¶48, quoting *Smith v. Smith*, 11th Dist. Ashtabula No. 98-A0034, 1999 WL 1488950, *4 (Oct. 15, 1999).

{¶36} "The trial court is required to make findings as to whether a party requesting the court to classify an asset as separate property has met his [or her] burden of proof and successfully traced an asset to separate property." *Id.,* citing *Letson v. Letson,* 11th Dist. Trumbull No. 95-T-5356, 1997 Ohio App. LEXIS 4445, *3, (Sept. 30, 1997). "A 'trial court's characterization of property (* * *) is a question of fact, thus, a reviewing court must apply a manifest weight of the evidence standard of review to the trial court's characterization." *Id.* at ¶49, quoting *Humphrey v. Humphrey*, 11th Dist. Ashtabula No. 2000-A0092, 2002-Ohio-3121, ¶16.

{¶37} In its decision, the trial court made the following conclusion based on the evidence:

> Neither party produced sufficient evidence to enable the Court to trace funds or assets and determine that any of the parties' real property or financial/bank accounts were the separate property of either party.

Accordingly, the trial court proceeded with dividing all of the parties' property as marital property.

{¶38} Both of these assignments of error argue the separate nature of property acquired many years before divorce proceedings began—1992, 2007, and 2007-2009 respectively. The assets were also commingled during the marriage as they were transferred between different accounts and liquidated, allegedly by Marcia with the help of her brother. There is no direct evidence in the record showing tracing of these funds, and the arguments asserted on appeal rely heavily on Bryan's testimony regarding the events, which the trial court found to be unreliable. Marcia's testimony on both issues, which the trial court determined was reliable, contradicts the claims made by Bryan. Therefore, the trial court did not err in concluding that Bryan failed to successfully trace the commingled assets to establish a separate property interest.

{¶39} Bryan's sixth and eleventh assignments of error are without merit.

{¶40} Bryan's fifth assignment of error challenges the trial court's decision not to join a party he argued was in possession of marital funds:

> [5.] The trial court erred in not recognizing that G. Robert Mason had control over a portion of the parties' marital assets and needed to be joined as a party in this case.

{¶41} Bryan argues the trial court erred by not allowing G. Robert Mason, Marcia's father, to be joined as a party because he was in possession of marital funds from the purchase of various properties, which were subsequently bought and sold several times between the parties, G. Robert Mason, and Peter and Janet Speece. Bryan attempted to file a third-party complaint adding G. Robert Mason as a party, which the trial court struck by order on September 13, 2018.

{¶42} Civ.R. 75(B) limits the application of the Ohio Rules of Civil Procedure in divorce actions, and states, in relevant part:

> Civ. R. 14, 19, 19.1, and 24 shall not apply in divorce, annulment, or legal separation actions, however:

14

(1) A person or corporation having possession of, control of, or claiming an interest in property, whether real, personal, or mixed, out of which a party seeks a division of marital property, a distributive award, or an award of spousal support or other support, may be made a party defendant; * * *.

{¶43} "Furthermore, joinder 'is within the discretion of the court and its purpose is to allow individuals to join whose interests need to be protected.'" *Przybyla v. Przybyla*, 2d Dist. Montgomery No. 27852, 2018-Ohio-3071, ¶115, quoting *Huener v. Huener*, 110 Ohio App.3d 322, 327 (3d Dist.1996).

{¶44} Under this assignment of error, Bryan restates an argument made to the trial court regarding property being transferred between different family members. He cites no legal authority for how the trial court erred by not joining Marcia's father as a party. The arguments made on appeal were considered by the trial court before striking the third-party complaint, and they were also considered through the evidence and testimony presented at trial regarding the property transfers. Given the circumstances, we do not conclude that the trial court abused its discretion in refusing to allow joinder of G. Robert Mason.

{¶45} Bryan's fifth assignment of error is without merit.

{¶46} Bryan's sixteenth assignment of error states:

[16.] The trial court erred in ordering the Defendant to pay temporary child support and spousal support and not enforcing the Plaintiff's obligations under the temporary order.

{¶47} Pursuant to R.C. 3105.18(B), "During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party." We have previously discussed how trial courts determine

15

temporary support awards in *Beck v. Beck*, 11th Dist. Lake No. 2016-L-054, 2017-Ohio-1106:

> "'There is no set formula under R.C. 3105.18 to guide courts to arrive at an appropriate amount of temporary support. The only explicit limitation in R.C. 3105.18(B) is that the award must be "reasonable." Courts are given discretion in deciding what is reasonable support because that determination is dependent on the unique facts and circumstances of each case.'" Thus, this court will not reverse such determination absent a finding that the trial court abused its discretion.

*Id.* at ¶19, quoting *Keating v. Keating*, 8th Dist. Cuyahoga No. 90611, 2008-Ohio-5345, ¶35, quoting *Cangemi v. Cangemi*, 8th Dist. Cuyahoga No. 86670, 2006-Ohio-2879, ¶15.

{¶48} Here, Marcia was awarded temporary spousal support in the amount of $2,000.00 per month and temporary child support in the amount of $4,323.52 per month. The trial court determined that the parties' main source of income during the marriage was Bryan's EnTech revenue. Marcia was not able to access that revenue during the divorce proceeding, which was extended considerably by Bryan's litigation tactics. Marcia relocated from the marital home with their two children, one of whom was still unemancipated. Thus, she was responsible for expenses related to relocating and providing for the children. An award of temporary spousal and child support was reasonable under those circumstances, and the trial court did not abuse its discretion.

{¶49} As a part of this assignment of error, Bryan also contends the trial court erred by not enforcing the portions of the temporary order that required Marcia to provide health insurance for Bryan and prohibited her from accessing marital funds. Bryan contends Marcia did not provide health insurance for him and accessed $200,000.00 in funds from a home equity line of credit on the marital residence one week before filing her second motion for temporary support. A motion was filed by

16

Bryan asking the court to reduce the temporary award in order for him to pay for his health insurance. That motion was never ruled on. However, the issues raised herein were before the court during the final trial. The trial court was in a position to consider any cost associated with the failure to pay health insurance and accessing of the home equity funds in the ultimate division of property.

{¶50} Bryan's sixteenth assignment of error is without merit.

{¶51} Bryan's thirteenth assignment of error states:

> [13.] The trial court abused its discretion by not ordering the Plaintiff to pay the Defendant a sum equal to one half of the funds he expended unilaterally to satisfy the parties' ongoing marital expenses from the date of the divorce filing.

{¶52} Under this assignment of error, Bryan argues the trial court abused its discretion by not compensating him for marital expenses he paid during the divorce proceeding. He claims that his income from EnTech no longer existed once the divorce proceeding began. He cites R.C. 3105.171(F) in support of the assignment of error.

{¶53} In response, Marcia argues the following: R.C. 3105.171(F) does not require a distribution for funds spent maintaining the marital estate during a divorce; a reimbursement of these funds would not be equitable because Bryan was the primary breadwinner who did not struggle with paying the expenses; Bryan remained in and enjoyed use of the marital home; and this consideration was already made by the trial court before issuing temporary support orders. We agree that a reimbursement of expenses is not warranted in these circumstances.

{¶54} R.C. 3105.171(F), outlined under a previous assignment of error, refers to divisions of marital property and distributive awards, not to reimbursements for expenses. Further, the record reflects the trial court fully considered the relevant factors before distributing assets and dividing liabilities. Bryan's argument that he was no

17

longer receiving any income after Marcia left the marital home is refuted by the evidence of licensing fees. Also, the trial court's finding of financial misconduct further demonstrates that he had substantial funds, which were taken from joint marital assets, with which to cover the expenses. Further, Bryan's litigation tactics substantially hindered the proceeding from progressing for years, as various appeals and collateral suits were filed with multiple courts.

{¶55} The trial court did not abuse its discretion in failing to reimburse Bryan for marital expenses.

{¶56} Bryan's thirteenth assignment of error is without merit.

{¶57} Under his fourteenth assignment of error, Bryan asserts:

> [14.] The trial court erred in ordering the Defendant to pay $5,000 a month in spousal support for the rest of his life.

{¶58} Marcia was awarded spousal support in the amount of $5,000.00 per month beginning with the entry of the trial court's final judgment, continuing conditionally for the rest of her life. Bryan argues that a lifetime award is an abuse of discretion based on the circumstances of the parties, and he also challenges the court's finding that Bryan had an earning potential of $1,000,000,000.00.

{¶59} "On appeal, the determination of spousal support is again reviewed under an abuse of discretion standard." *Davis v. Davis*, 11th Dist. Geauga No. 2011-G-3018, 2013-Ohio-211, ¶87, citing *Slobody v. Friedland-Slobody*, 11th Dist. Geauga No. 2007-G-2777, 2008-Ohio-3395, ¶20. Thus, we must determine whether the record contains some competent, credible evidence to sustain the trial court's findings of fact. *Habo*, *supra*, at ¶55.

{¶60} R.C. 3105.18(C)(1) lists several factors for the trial court to consider when determining whether to award spousal support:

18

In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶61} The trial court considered the arguments Bryan now raises on appeal during the lengthy trial and determined that an award of spousal support was justified. The income of the parties was heavily disputed; however, evidence and testimony regarding each party's income was presented. The finding that Bryan had an earning potential of $1,000,000,000.00 is clearly a typographical error. That error was corrected on the child support worksheet, which imputed income to Bryan in the amount of $1,090,000.00, which was based on the evidence presented regarding EnTech's net income from 2014 before the divorce filing. The relative earning abilities of the parties, their ages, and conditions of the parties were also presented to the trial court.

{¶62} The retirement benefits of the parties and relative assets and liabilities were considered in conjunction with the divorce. The marriage lasted nearly 25 years, which is a substantial amount of time. Marcia was determined to be the custodial parent of one minor child at the time of divorce. The trial court also considered the standard of living of the parties during the marriage, with Bryan providing the primary source of income through EnTech. The tax consequences, for each party, were contemplated directly in the award. Finally, the trial court also retained jurisdiction to modify or terminate the spousal support amount. Accordingly, we conclude the trial court did not abuse its discretion in awarding spousal support to Marcia for the rest of her life, subject to potential modification or termination. There is competent, credible evidence in the record to support the trial court's findings of fact.

{¶63} Bryan's fourteenth assignment of error is without merit.

{¶64} Bryan's fifteenth assignment of error states:

[15.] The trial court erred in ordering the Defendant to pay child support in the amount of $5,000 per month.

{¶65} Former R.C. 3119.04(B) governed the trial court's child support computation. That statute provided:

If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, or the child support enforcement agency, with respect to an administrative child support order, shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. * * *.

{¶66} Accordingly, "when the combined gross income of the parents exceeds $150,000, the statute requires a court to treat the issue of child support on a case-by-case basis[.]" *Longo v. Longo*, 11th Dist. Geauga Nos. 2008-G-2874 & 2009-G-2901, 2010-Ohio-3045, ¶11. In so doing, however, the court must consider the needs and standard of living of the children and the parents in arriving at its conclusion. *Id.* Absent an abuse of discretion, a trial court's determination regarding child support obligations will not be disturbed on appeal. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997).

{¶67} The child support computation worksheet imputed Bryan's annual income as $1,090,000.00 and Marcia's annual income as $12,000.00. Bryan challenges the determination of income for the parties, which we have already affirmed as within the trial court's discretion. Because the parties' combined income exceeded $150,000.00, the trial court was required to consider the needs and standard of living of the minor child and the mother. As discussed previously and throughout, the trial court properly

21

considered the circumstances of the parties' 25-year marriage and determined that $5,000.00 was an appropriate award of child support. The trial court heard testimony from Marcia about the parties' earning ability; namely, that she was self-employed and had an earning potential of $12,000.00 a year. The trial court also heard testimony from Bryan about the earning ability of the parties, and voluminous evidence was submitted with regard to Bryan's earning potential and profits through EnTech. The trial court found Marcia to be a credible witness and Bryan not to be a credible witness. Given the evidence heard, the award of child support is not unreasonably higher than the temporary award of $4,323.52, it is supported by competent, credible evidence, and it is not an abuse of discretion.

{¶68} Bryan's fifteenth assignment of error is without merit.

{¶69} Bryan's seventeenth assignment of error states:

> [17.] The trial court erred by not providing the Defendant due process and a fair trial.

{¶70} "'Due process mandates that a party shall have adequate notice of a proposed action as well as an opportunity to be heard.'" *Zamos v. Zamos*, 11th Dist. Portage No. 2004-P-0108, 2005-Ohio-6075, ¶18, quoting *Rendina v. Rendina*, 11th Dist. Lake No. 91-L-019, 1992 WL 217993, *2 (Feb. 28, 1992). "Due process 'is not a technical conception with a fixed content unrelated to time, place and circumstances,' but rather 'expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty.'" *Dowhan v. Dowhan*, 11th Dist. Lake No. 2012-L-065, 2013-Ohio-4097, ¶17, quoting *State v. Warren*, 118 Ohio St.3d 200, 2008-Ohio-2011, ¶28. "In other words, 'the concept of due process is flexible and varies depending on the importance attached to the interest and the particular

22

circumstances under which the deprivation may occur.'" *Id.*, quoting *State v. Hochhausler*, 76 Ohio St.3d 455, 459 (1996).

{¶71} The basis of Bryan's due process argument is that the trial court repeatedly ruled against him on motions and issues that we have already addressed and affirmed in the present appeal; did not rule in a timely matter on some issues; refused to allow a second attorney to conduct cross-examination of witnesses, although one of his attorneys was permitted and did conduct cross-examinations; and restricted him from introducing evidence at trial. However, after reviewing the transcripts, exhibits, and entirety of the record, we find no lack of due process that would amount to plain error. Bryan received adequate notice of the proceeding, and years of litigation culminated in 10 days of trial conducted by the Court of Common Pleas.

{¶72} Bryan's seventeenth assignment of error is without merit.

{¶73} Bryan's eighteenth assignment of error states:

[18.] The trial court erred in denying the Defendant's Motion for a Copy Of Storage Media filed in this case.

{¶74} In this assignment of error, Bryan argues a recording made of attorney-client discussions between himself and counsel, which was sealed by the trial court, should now be made a part of the record on appeal. The trial court denied his motion for a copy of the recorded audio for supplementing the record.

{¶75} App.R. 9(E) governs supplementing the record on appeal, and states:

If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by the trial court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified,

23

filed, and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.

{¶76} The audio recording at issue was not introduced at trial, and Bryan points to no relevant information for this court to consider. He also identifies no law or other justification for supplementing the record on appeal with a sealed audio recording not introduced or otherwise referenced during litigation. The trial court did not err in denying Bryan a copy of the audio recording for the purpose of supplementing the record on appeal.

{¶77} Bryan's eighteenth assignment of error is without merit.

{¶78} Bryan's nineteenth assignment of error states:

[19.] The trial court erred in adding third party defendants in this case and issuing temporary restraining orders encumbering the Defendant's separate property.

{¶79} As discussed above in Bryan's fifth assignment of error, Civ.R. 75(B)(1) allows for joinder in a divorce proceeding of "[a] person or corporation having possession of, control of, or claiming an interest in property, whether real, personal, or mixed, out of which a party seeks a division of marital property, a distributive award, or an award of spousal support or other support, may be made a party defendant."

{¶80} Of the 14 new party defendants, Bryan takes issue with two: Charles Schwab and Merrill Lynch. He argues the accounts held by these financial institutions were awarded to him in the divorce and therefore should not be subject to joinder or to any restraining order issued by the trial court.

{¶81} We hold that each of the two financial institutions meets the definition provided in Civ.R. 75(B)(1), and therefore it was within the trial court's discretion to order them joined as party defendants.

{¶82} Bryan's nineteenth assignment of error is without merit.

24

{¶83} Bryan's twentieth assignment of error states:

[20.] The trial court erred in not properly determining the amount of attorney fees incurred by the parties and EnTech, Ltd. and abused its discretion by awarding the Plaintiff's counsel $200,000 in legal fees.

{¶84} The trial court determined that Marcia accrued $317,040.70 in attorney fees, and she was awarded a payment of $200,000.00 from Bryan. Bryan argues the determination of attorney fees was incorrect because it did not include the additional fees incurred by EnTech during the divorce proceeding. Further, he argues he is unemployed and unable to pay the fees.

{¶85} "Whether to award attorney fees to a party is within the trial court's sound discretion." *Dilley v. Dilley*, 11th Dist. Geauga No. 2010-G-2957, 2011-Ohio-2093, ¶86, citing *Rand v. Rand*, 18 Ohio St.3d 356, 359 (1985). "Pursuant to R.C. 3105.73(A), '[i]n an action for divorce * * * or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.'" *Id.* at ¶87.

{¶86} In this case, the trial court properly considered the factors outlined in R.C. 3105.73(A) throughout the proceeding. The trial court stated: "Based upon the parties' conduct and the conduct and practices of counsel, Plaintiff Marcia Speece is entitled to an award of a portion of her attorney's fees and expenses." The trial court also found that Bryan had committed financial misconduct, as discussed above, had violated the temporary restraining order, and that his testimony was "evasive and unreliable." These

25

findings are supported by competent, credible evidence in the record. Therefore, the award of a portion of Marcia's attorney fees was not an abuse of discretion.

{¶87} Bryan's twentieth assignment of error is without merit.

{¶88} Bryan's remaining assignments of error, as well as Marcia's first assignment of error, challenge the trial court's valuation of EnTech. Bryan's second and third assignments of error state:

> [2.] The trial court erred in determining that EnTech, Ltd. had a product that was not obsolete or worthless and that the Defendant had not taken any action to wind up or dissolve the company that he claims to be worthless.
>
> [3.] The trial court erred in determining the current value of EnTech, Ltd. to be $169,387 and awarding the Plaintiff the sum of $84,693.50 as one half of its current value.

{¶89} Marcia's first assignment of error states:

> [1.] The trial court erred as a matter of law and abused its discretion in its valuation of the marital business.

{¶90} Both of the parties dispute the valuation of EnTech as being $169,387.00. Bryan claims the company is worthless because its product was made obsolete by the development of certain software. He claims the trial court erred by not taking into consideration the expenses of the company and its potential liability relating to the case currently on appeal in the Sixth Circuit when determining the overall value. Bryan claims the company has been rendered insolvent and that $169,387.00 is the amount of cash the company had in the bank at the time of valuation, which is its only asset.

{¶91} Marcia argues the trial court erred as a matter of law and abused its discretion by considering evidence and testimony from Bryan's expert witness, John Davis, because Mr. Davis was provided with a transcript of the testimony of Marcia's

26

expert witness, Edward Blaugrund, after the trial court had ordered a separation of witnesses pursuant to Evid.R. 615.

{¶92} Geauga County Loc.R. 26 states, in pertinent part: "Since Ohio Civil Rule 16 authorizes the Court to require counsel to exchange the reports of medical and expert witnesses expected to be called by each party, each counsel shall exchange with all other counsel written reports of medical and nonparty expert witnesses expected to testify in advance of the trial." This court has previously stated in *Biro v. Biro*, 11th Dist. Lake Nos. 2006-L-068 & 2006-L-236, 2007-Ohio-3191, ¶22:

> The inherent purpose of local rules that provide for the timely exchange of expert reports and timely identification of expert witnesses is to avoid unfair surprise at trial and to ensure that the adverse party has a reasonable opportunity to respond to the expert testimony. However, a trial court does not abuse its discretion in admitting such testimony where the opposing party is not prejudiced. *See, e.g., Wright v. Wright* (Sept. 13, 2001), 8th Dist. No. 78275, 2001 WL 1110248 where the expert report was faxed to opposing counsel just hours before trial but where counsel was aware of the expert and the substance of the testimony.

{¶93} Here, the parties exchanged expert reports prior to trial. Marcia does not assign any error to the exchange of the reports, and she makes no showing of prejudice resulting from the review of transcripts by Bryan's expert following the testimony of Marcia's expert. Therefore, it was not an abuse of discretion for the trial court to consider the testimony of Bryan's expert witness. With that conclusion, we address the valuation of EnTech made by the trial court after considering the testimony of both experts.

{¶94} "The trial court has broad discretion in determining that one is qualified as an expert witness. In *Nasheter v. C.H. Hooker Trucking Co.*, 19 Ohio App. 2d 169 (5th Dist.1969), the Court held that an appraiser's valuation of property was admissible even where he relied upon the opinions of others familiar with the land in making the

27

appraisal." *Lutes v. Lutes*, 11th Dist. Geauga No. 988, 1982 WL 5866, *1 (Mar. 31, 1982).

{¶95} "'Ohio courts have not specified that only one method of valuation is appropriate when dividing marital property. Rather, an equitable division of marital property depends upon the totality of the circumstances such that a flat rule for valuation is not appropriate in a property division.'" *Berger v. Berger*, 11th Dist. Geauga No. 2014-G-3191, 2015-Ohio-5519, ¶10, quoting *Kuper v. Halbach*, 10th Dist. Franklin No. 09AP-899, 2010-Ohio-3020, ¶12. A trial court is not required to use nor precluded from using any particular valuation method. *Id.* at ¶11.

{¶96} "Thus, when a 'value' question is raised on appeal, the task of the appellate court "'is not to require the adoption of any particular method of valuation, but to determine whether, based on all relevant facts and circumstances, the [trial] court abused its discretion in arriving at a value.'"" *Davis*, *supra*, at ¶41, quoting *McLeod v. McLeod*, 11th Dist. Lake No. 2000-L-197, 2002-Ohio-3710, ¶61, quoting *James v. James*, 101 Ohio App.3d 668, 681 (1st Dist.1995). Accordingly, we will not disturb the trial court's decision as to value, provided it is supported by some competent, credible evidence in the record. *Id.*

{¶97} At trial, Bryan testified about his requirement to honor contractual non-disclosure agreements on behalf of EnTech. His efforts in honoring these agreements included, inter alia, filing federal lawsuits seeking injunctive relief and refusing to disclose property and equipment containing confidential information to Marcia during discovery. Further, while Bryan argues here that he attempted to wind up the company in 2016, it is undisputed that he took no action to dissolve EnTech prior to the final decree of divorce. Bryan argues that these factors were considered in error by the trial

28

court in its valuation of the company. However, the trial court's consideration of these business decisions in determining the value of EnTech was not error.

{¶98} Further, we cannot conclude that the determination by the trial court of EnTech's value being $169,387.00, where the court reviewed all of the evidence and observed the testimony and reports from two experts on the issue, amounts to an abuse of discretion. The valuation of EnTech was a hotly disputed issue throughout the divorce proceeding, during discovery, and on collateral attack from a writ of prohibition and federal court filing. The record provides competent, credible evidence of the valuation of $169,387.00 which we will not disturb on review.

{¶99} Even assuming arguendo Bryan's expert testimony was inadmissible, the trial court had voluminous evidence and testimony with which to make a determination as to the value of the company. *See Iacampo v. Oliver-Iacampo*, 11th Dist. Geauga No. 2011-G-3026, 2012-Ohio-1790, ¶48 (The admission of inadmissible expert's testimony regarding the cause of the company's growth was harmless error because the court had sufficient evidence before it to determine the passive nature of the appreciation of her shares of the company.).

{¶100} Bryan's second and third assignments of error are without merit.

{¶101} Marcia's first assignment of error is without merit.

{¶102} Marcia's second assignment of error states:

> [2.] The trial court erred and/or abused its discretion by failing to grant the appellee, Marcia Speece, a judgment against defendants, Janet Speece for the marital assets currently in their [sic] possession and/or control.

{¶103} A trial court's characterization of property as separate or marital will be upheld when the record contains some competent credible evidence to support the trial

29

court's conclusion. *Iacampo, supra,* at ¶17, citing *Bizjak v. Bizjak,* 11th Dist. Lake No. 2004-L-083, 2005-Ohio-7047, ¶10.

{¶104} Ultimately, the trial court determined the evidence did not establish the funds paid to Janet were marital property and not attorney fees. The court specifically found Janet's conduct to be "questionable, at best," questioned whether the legal work was even completed, and even admonished her during trial. However, the trial court ultimately considered the facts that (1) Janet did provide legal work for EnTech, which Marcia conceded during testimony; (2) Marcia was complicit in any alleged scheme to avoid taxation during the marriage; and (3) Janet claimed all legal fees as income and paid federal income tax on the funds paid to her. Because of this, the trial court ultimately concluded Marcia did not meet her burden to prove the funds were marital property and not attorney fees, and this conclusion is supported by the record.

{¶105} Marcia's second assignment of error is without merit.

{¶106} The judgment of the Geauga County Court of Common Pleas is hereby modified, as concluded under Bryan's fourth assignment of error, to reflect that 75% of the licensing payments ordered to be distributed to Marcia amounts to $393,096.75. As modified, the judgment is affirmed.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.